BRIER HILL COLLIERIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11406, 19365, 28186.   Promulgated June 11, 1928.

*Jesse C. Adkins, Esq.,* and *Frank F. Nesbit, Esq.,* for the petitioner.
*Orris Bennett, Esq.,* and *Hartford Allen, Esq.,* for the respondent.

502

504

OPINION.

SIEFKIN: At the hearing counsel for the respondent stipulated that the timber acquired by the petitioner at the time of its organization in 1904 had a fair market value of $250,000. Since the respondent, in determining the deficiency here involved, allowed only $100,000, the additional amount of $150,000 should be included in invested capital in the computation of the tax for the years 1918 to 1920, inclusive.

The parties also agreed at the hearing that the petitioner was entitled to the allowance of additional ordinary and necessary business expenses amounting to $600 in the year 1920 instead of the sum of $1,111.84. An additional deduction of $600 is therefore allowed for that year.

Other errors assigned in the petition and the amendments thereto have, apparently, been abandoned by the petitioner, and, since no evidence has been adduced with regard to them, a decision in those respects must be for the respondent.

The remaining issues for decision are as follows:

1. Failure of the respondent to include in invested capital of the petitioner during the years 1918, 1919, and 1920, a value for the assets paid in for stock in excess of liabilities assumed, taken over from the Crawford Coal & Iron Works, consisting of mine development, dwelling houses and buildings, machinery and equipment,

accounts receivable, and similar items as shown by the books of the petitioner and the Crawford Coal Co.;

2. Whether petitioner is entitled to deduct as an ordinary and necessary expense in the years 1918 and 1919, certain costs of resurveying, maintaining and marking the boundaries of petitioner's property;

3. Whether petitioner is entitled to deduct as an ordinary and necessary expense in the years 1918 and 1919, the cost of removing a boiler injured as the result of an accident and installing a new one;

4. Whether petitioner is entitled to deduct as an ordinary and necessary expense in the years 1918, 1919, and 1920, expenditures for track, trolley wire, rails and cars at the Twin Mine;

5. Whether petitioner should be allowed a deduction as an ordinary and necessary expense in the year 1918, costs of development work at Laurel Creek Mine and Twin Mine;

6. Whether the respondent erred in determining the amount of coal depletion by the petitioner during the years 1918 to 1923, inclusive.

---

1. In Docket Nos. 11406 and 19365, relating to the years 1918, 1919, and 1920, the petitioner alleges error of the respondent in failing to include in petitioner's invested capital the net value of assets paid in for stock in excess of liabilities assumed, taken over from the Crawford Coal & Iron Co., as shown by the books of the petitioner and the Crawford Coal & Iron Co.

While the petitioner has shown that the excess of the assets over the liabilities of the Crawford Coal & Iron Co., as of September 30, 1904, was $50,319.93, as shown by the books of the predecessor company, we are of the opinion that this evidence does not prove the value of the assets acquired. There is evidence to the effect that all such assets were purchased within two years prior to 1904, but whether such assets continued of that value to 1904 or were expended before then is not proved. The petitioner, in its brief, also claims that an item of cash in the amount of $1,954.95 was included in the assets acquired and that it should be included in invested capital. However, no proper evidence was introduced to show that such was the case. The action of the respondent is approved.

2. The petitioner owned a large acreage of wild, wooded, mountainous land which was hard of access. The land had been surveyed and the boundaries marked a long time prior to 1918, but the marks having been obliterated, the petitioner, in 1918 and 1919, employed a surveyor to resurvey the land and remark the boundaries. The cost of this work, exclusive of material, was $1,896.63 in 1918, and

$3,960.91 in 1919. The reason for resurveying and remarking the boundaries was to try to prevent the loss of land by adverse possession. Under Tennessee law adverse possession under color of title for seven years passes title. The respondent disallowed these amounts as expenses of the business upon the ground that they were costs of defending title to the property. However, we find that they were not costs of defending title, but were ordinary and necessary expenses incurred in protecting petitioner's property, and, therefore, hold that the petitioner is entitled to deductions of the amounts expended.

3. In 1918, due to negligence of a fireman, a boiler in petitioner's Baker Mine bellied down over the fire and caused such damage that it could not be used or repaired. The petitioner installed a new boiler in place of the old one and in doing so had to tear out a side of the building as well as the fire bridge and part of the boiler setting. The setting and the walls were then built up around the new boiler. Except for the accident, the old boiler would have lasted the life of Baker Mine which closed down in 1920. The cost of this work was $3,441.44, and consisted of expenditures for labor, materials, freight and miscellaneous boiler fittings and accessories.

In *Illinois Merchants Trust Co.*, 4 B. T. A., 103, we allowed a deduction as necessary and ordinary expense the cost of removing wooden piles and inserting concrete supports under a warehouse built over the Chicago River. This expense had become necessary because the water level had lowered and the wooden piles had dry-rotted. In that case we stated:

A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was required. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use.

In the instant case, while a new boiler was installed to take the place of the old one, the effect was the same as a repair, since Baker Mine had a limited life. We consider expenses incurred in repairing machinery injured due to negligence of a workman, ordinary and necessary expenses incurred in the business. No claim is made for deduction of the cost of the boiler. We are of the opinion that the petitioner is entitled to a deduction of $3,441.44, for the expense of installing the new boiler.

4. It was stipulated between the parties that in the year 1918, the petitioner expended for steel rails, $9,691.90, and for mine cars, $5,757.07; that in the year 1919, there was expended for steel rails and

switches, $5,618.15, and for mine cars and tracks for mine cars, $5,471.04; and that in the year 1920, the petitioner expended for mine cars, $7,361.11, for car rails, $9,120.90; and for trolley wire, $625.31. All of these amounts were incurred at the petitioner's Twin Mine. The petitioner contends that these are ordinary and necessary expenses and should be allowed as deductions, basing such position upon the "normal output" theory, and without any evidence of the life of the assets acquired. We have heretofore held contrary to this contention in *Union Collieries Co.*, 3 B. T. A. 540, and *White Ash Coal Co.*, 10 B. T. A. 942. The deduction for these items must be disallowed.

5. For the year 1918, the petitioner claimed as expense an amount of $7,883.22 expended in connection with Twin Mine, and an amount of $3,077.78 expended in connection with Laurel Creek Mine. The parties stipulate that these amounts were expended, but in the deficiency letter the respondent charged them to capital as development costs of the mines.

Petitioner depends upon article 222, Regulation 45 (1920 Ed.), which provides:

All expenditures for development, rent and royalty in excess of receipts for minerals sold shall be charged to capital account, recoverable through depletion, while the mine is in the development stage. Thereafter any development which adds value to the mineral deposit beyond the current year shall be carried as a deferred charge and apportioned and deducted as an operating expense in the year to which it is applicable.

The holding of the respondent must be approved. See *Union Collieries Co.*, and *White Ash Coal Co.*, *supra*.

6. The respondent allowed petitioner depletion of 3.1 cents upon its coal. Petitioner contends that a larger rate should be allowed in each of the years in controversy.

Section 234 (a) of the Revenue Acts of 1918 and 1921, provides:

That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions;

* * * * * * *

(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date.

From all the evidence submitted, we are of the opinion that depletion should be allowed at the rate of 10 cents per ton of coal mined in each of the years in controversy.

*Judgment will be entered under Rule 50.*